AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

E-FILED
Friday, 11 December, 2020 01:13:39 PM
Clerk, U.S. District Court, ILCD



# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )    Case No. 20-MJ-7153 |
| 245 S. Clinton Ave, Bradley, Illinois, more particularly described on Attachment A | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

245 S. Clinton Ave, Bradley, Illinois, more particularly described in Attachment A, that is attached hereto and incorporated herein by specific reference,

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252 | Distributing Child Pornography |

The application is based on these facts:

See Affidavit of FBI Special Agent John Gerrity

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/John Gerrity*

_____
*Applicant's signature*

John Gerrity, Special Agent, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____electronic mail and telephone_____ *(specify reliable electronic means)*.

*s/Eric Long*

Date: _____12/11/2020_____

_____
*Judge's signature*

City and state: _____Monticello, IL_____

Eric I. Long, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Special Agent John Gerrity, being duly sworn, do hereby and depose and state:

### Affiant's Background

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been employed in this capacity since January 2016. I am currently assigned to a squad in the Champaign Resident Agency of the Springfield Division that investigates a wide variety of federal crimes, including violent crimes against children.

2.      I am personally involved in an investigation with other federal, state, and local law enforcement agencies into alleged criminal activities perpetrated by DANIEL BRIAN MAHNKE, JR. ("Mahnke"). The information contained in this Affidavit is based upon a review of public and private records, undercover (UC) activity and other investigative activities conducted by law enforcement personnel assigned to this case.

3.      On December 10, 2020, a Criminal Complaint and arrest warrant was issued by United States Magistrate Judge Zia M. Faruqui, District of Columbia, charging Mahnke, DOB 9/29/1987, with knowingly distributing any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, in violation of 18 U.S.C. § 2252(a)(2.). This affidavit is in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search: Mahnke's residence, located at 245 S. Clinton Avenue, Bradley, IL 60912, in Kankakee County, in the Central District of Illinois, the SUBJECT PREMISES (more

particularly described in Attachment A, and incorporated hereto) for the items described in Attachment B.

4.     Because this Affidavit is provided for the limited purpose of establishing probable cause for a search warrant, I have not included all information known to me regarding this investigation, but rather have set forth only those facts necessary to establish probable cause to believe that Mahnke has committed the charged offense and that his residence contains evidence of crimes, fruits of crime, and property designed for use, intended for use, or used in various crimes.

### The Search Location

5.     Mahnke's residence, which is located at 245 S. Clinton Avenue, Bradley, IL 60912, in Kankakee County, in the Central District of Illinois.

6.     I have probable cause to believe that evidence of, fruits of, and property pertaining to the following crimes, as set forth in Attachment B, will be found at the above search locations: certain activities relating to material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252.  I also have probable cause to believe that Mahnke resides in and will be found in the Premises.

### The Offense Conduct

7.     On Wednesday December 9, 2020, a Federal Bureau of Investigation Washington Field Office Task Force Officer was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, the UC entered a fetish website for the purpose of identifying individuals

who are seeking to exploit children. This site is forum based and allows users to post comments and advertisements in different areas of the site. The site is known to the UC as a place where people meet, discuss and trade original images of underage children, links containing child pornography, and videos among other things. On December 9, 2020, the UC posted the following advertisement, "Any other dads here get to play with really young. Active dad here in USA looking to meet others into same." The UC left his KIK[1] screen name at the end of the message.

8.      On December 9, 2020, at 11:31am EST an individual using the KIK screen name, "mahnke1987" with a display name of "DJ" subsequently identified as the defendant, Daniel Mahnke, initiated a private chat communication with the UC stating, "Hey John if I send you a link will I get some its black wolf."[2] Mahnke informed the UC that he was a 33 year-old male residing in Illinois. Mahnke sent the UC a Mega link via KIK instant messenger. The UC opened the link to view the contents. Upon opening the link, the UC observed a folder titled, "Football," with several sub files. The majority of the sub files displayed titles indicative of child pornography. The following is a sample of some of the titles: pedodad, pedomom, rape, kids on kids. The UC reviewed the entire file. The file contained hundreds of images and videos depicting prepubescent children, some young as toddlers, engaged in sexual acts with men and woman. The following is a sample of videos from the, "pedodad" and "pedomom" sub files: 1) An adult female

---

[1] KIK is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups.
[2] Black wolf refers to a username from the original forum website.

sitting on a floor topless. The woman is holding a nude baby boy while sucking his bare penis 2) An adult female lying nude with a nude prepubescent female. The adult is licking and digitally penetrating the girl's bare vagina 3) An adult female licking the bare vagina of a female toddler 4) An adult male inserting his penis in the anus of a prepubescent boy and ejaculating on his face 5) A prepubescent boy sucking the penis of a teenaged boy.

9.     During the course of the chat, the UC informed Mahnke that he was sexually active with his purported eight year-old daughter. The UC sent a few images of his purported daughter to Mahnke.[3] Mahnke asked the UC to send him additional images of his purported daughter. When the UC said he usually only trades with other dads for live images, Mahnke responded, "Am trying to get a daughter so."  He then continued stating that he would send the UC anything he could get and that he had already sent a "massive link." The UC stated, "Is there anything in particular you want to see with her?" Mahnke responded, "Well its up to u I would like to see her pussy." After the UC explained that he has shared custody of his child, Mahnke informed the UC that he was engaged and "trying to make a baby". As the chat continued Mahnke stated again that he wanted to see the UC's purported daughter naked. The UC asked Mahnke if he ever met and chatted with any girls from the site described in the first paragraph of this affidavit. Mahnke stated that he met a 13 or 14 year-old female from that site and communicates with her on Snap Chat. Mahnke described her as 5'3 with small breasts. Mahnke described this girl as his "fuck toy" and sent the UC an image of her. The image

---

[3] The images the UC sent to "Mahnke" did not depict a real child.

depicts a female spreading her bare vagina open with her fingers. The UC asked, "U get her to do naughty things?" Mahnke responded, "Yes."

10.     As to the identification of Mahnke, the UC asked Mahnke to take a live camera picture of himself holding up three fingers. Mahnke complied and sent the UC a live camera image of himself holding up three fingers. Mahnke's face is clearly visible in the pictures.

11.     On December 9, 2020, an emergency disclosure request was sent to Kik for username "mahnke1987." On the same day, Kik's emergency disclosure response provided additional account information which included subscriber name "D J", unconfirmed email address dbmahnke@hotmail.com, and various Verizon Wireless and Comcast Cable IP addresses spanning dates 11/09/2020 - 12/09/2020. A second emergency disclosure request form was sent to Comcast to obtain account information associated with the Comcast IP addresses provided by Kik: 73.22.176.25 & 73.246.69.13. Comcast verbally provided subscriber information for both IP addresses with 73.22.176.25 resolving to Clara Gray at 245 S. Clinton Avenue, Bradley, IL 60912 and IP address 73.246.69.13 resolving to SYS Consulting Solutions, a health care consulting business, registered to address 33 S. Main Street, Manteno, IL 60950. FBI database checks for Clara Gray's Illinois driver's license revealed her current home address as 33 S. Main Street, Manteno, IL 60950, the same home address listed on subject Daniel Mahnke's Illinois driver's license. Images obtained from Daniel Mahnke's Facebook account (www.facebook.com/daniel.b.mahnke) and his girlfriend Clara Gray's Facebook page

([www.facebook.com/clara.gray.31](www.facebook.com/clara.gray.31)) appear to depict the same man that appears in the image Mahnke provided to the UC.

12.     The residence at 245 S. Clinton Avenue, Bradley, IL 60912 was purchased on November 23, 2020. On November 27, 2020, Mahnke's girlfriend/fiancé, Gray, set up utilities in her name.

13.     Based upon the property purchase, UC chats with Mahnke, IP addresses, and Gray setting up utilities, it is likely that Mahnke is residing with Gray at the residence on 245 S. Clinton Avenue, Bradley, IL 60950.

### BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

14.     I have had both training and experience in the investigation of computer-related crimes.  Based on my training, experience, and knowledge, I know the following:

   a.   Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography:  production, communication, distribution, and storage.

   b.   Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth."  Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards are often large enough to store thousands of high-resolution photographs or videos.

   c.   A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also

connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. **Smartphones and/or mobile phones are also often carried on an individual's person.**

e. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f. Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone or external media in most cases.

g. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an

e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

15.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

16.     I submit that if a computer or storage medium is found on the Subject Premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

17.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and

chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

c. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.

d. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or

electronic storage media access, use, and events relating to the crime under investigation.

e.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

f.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

g.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer

11

behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

h.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

i.  I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that a computer used to commit a crime of this type may contain data that is evidence of how the computer was used, data that was sent or received, notes as to how the criminal conduct was achieved, records of Internet discussions about the crime, and other records that indicate the nature of the offense.

18.   Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of the premises it is not always possible to search

computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software website, or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can

conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

19.     Additionally, based upon my training and experience and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

20.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO DISTRIBUTE, RECEIVE, POSSESS, AND/OR PRODUCE CHILD PORNOGRAPHY

21.     Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who distribute, receive, possess, and/or produce child pornography:

    a.  Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

    b.  Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c.  Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes,

magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[4]

f. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

---

[4] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010).)

g.  Such individuals prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.  Thus, even if "jjones2010j" or Beals uses a portable device (such as a mobile phone) to access the internet and child pornography, it is more likely than not that evidence of this access will be found in his home, the SUBJECT PREMISES, as set forth in Attachment A.

22.     Based on the following, I believe that the user of the applications described herein residing at Subject Premises likely displays characteristics common to individuals who distribute, possess or produces child pornography.  For example, the target of investigation:

a.  Mahnke sent hundreds of images and videos depicting prepubescent children, some young as toddlers, engaged in sexual acts with men and woman to the UC;

b.  Mahnke solicited images from the UC encouraging the sexual abuse and exploitation of a minor;

c.  Mahnke bragged about sesxually exploiting a 13 to 14 year old minor via Snapchat. Mahnke described this girl as his "fuck toy" and sent the UC an image of her;

d.  Mahnke detailed that he was engaged and trying to make a baby.

**REQUEST TO SEAL**

23.     It is further requested that this Affidavit be sealed by the Court until such time as the Court directs otherwise.  Given the confidential nature of this investigation, disclosure would severely jeopardize the investigation in that it might alert the target of

17

the investigation at the Subject Premises to the existence of an investigation and likely lead to the destruction and concealment of evidence, and/or flight.

<u>CONCLUSION</u>

24.     Based upon the foregoing, I submit that this affidavit sets forth sufficient facts to establish probable cause to believe that, from on or about December 9, 2020 and continuing through the date of this affidavit, in Kankakee County, in the Central District of Illinois, that there are computers, digital devices, documents, other files, and physical objects related to MAHNKE's sexual exploitation of minor children, as described above and throughout this affidavit, are located at 245 S. Clinton Avenue, Bradley, IL 60950, as described in Attachments B hereto.

FURTHER AFFIANT SAYETH NAUGHT.

_s/John Gerrity_
JOHN GERRITY
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with Fed.R.Crim.P. 41.1 by telephone and electronic mail this 11th day of December 2020.

s/Eric Long

ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

<u>**ATTACHMENT A**</u>

**DESCRIPTION OF LOCATION TO BE SEARCHED**

The entire property located at 245 S. Clinton Avenue, Bradley, IL 60912, in Kankakee County, in the Central District of Illinois, including the residential building, any outbuildings, and any appurtenances thereto (the "Subject Premises").  The subject premises is a beige single story house, three bedroom one bathroom, and approximately 1000 square feet.



## <u>ATTACHMENT B</u>

## **ITEMS TO BE SEIZED**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

   e. evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography and child erotica, any images of minors used to assist in identifying children depicted in child pornography and erotica.

5. Records, information, and items relating to violations of the statutes described above including:

a. Records, information, and items relating to the occupancy or ownership of the Subject Premises, including utility and telephone bills, mail envelopes, or addressed correspondence;

b. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

c. Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

d.  Records and information relating to the sexual exploitation of children, including correspondence and communications between users of the applications described in the affidavit;

e.  Records and information showing access to and/or use of applications described in the affidavit; and

f.  Records and information relating or pertaining to the identity of the person or persons using or associated with "mahnke1987" and "black wolf."

g.  The PERSON to be arrested: Daniel Mahnke, DOB 9/29/1987.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.